ROBERT A. FREEMAN, III, AND STEPHEN L. BARDEN, III, AS TRUSTEES OF THE KENNETH WILSON TRUST, AND KENNETH WILSON, PLAINTIFFS v. PACIFIC LIFE INSURANCE COMPANY, DEFENDANT

No. COA02-634

(Filed 18 March 2003)

## 1. Constitutional Law— full faith and credit—class action—notice

A Kentucky judgment was entitled to full faith and credit where the Kentucky court found that the defendant in a class action suit had provided the required notice, even though the plaintiff in this North Carolina action allegedly did not receive actual notice.

## 2. Class Actions— full faith and credit—every member not listed—judgment not ambiguous

A Kentucky judgment in a class action suit against an insurance company was not inherently ambiguous, and was entitled to full faith and credit, where the order did not list every member of

the class but set out the types of insurance polices affected and certified as part of the class.

**3. Class Actions— foreign judgment—authentication**

A Kentucky class action was properly authenticated through the affidavit of an attorney.

Appeal by plaintiffs from judgment entered 7 March 2002 by Judge Zoro J. Guice, Jr. in Buncombe County Superior Court. Heard in the Court of Appeals 12 February 2003.

*Ball Barden & Bell, P.A., by Stephen L. Barden, III and Thomas R. Bell, Jr., for plaintiffs-appellants.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Stephen J. Grabenstein, for defendant-appellee.*

TYSON, Judge

I. Background

On 25 January 1994, Kenneth Wilson ("Wilson") purchased a "flexible premium adjustable" life insurance policy ("policy") on his life with a death benefit of $4,000,000.00 from Pacific Life Insurance Company ("defendant"). The policy is owned by an insurance trust with Robert A. Freeman III ("Freeman") and Stephen L. Barden III ("Barden") serving as named Trustees.

Defendant's agent told Wilson that if he paid an initial sum of $1,044,015.00 for the policy and made 60 consecutive monthly payments of $8,765.00, the policy reserves would service the policy until Wilson attained the age of 92. The agent in selling the policy further represented that, as a "vanishing premium" policy, no further premium payments would be required to maintain a death benefit of $4,000,000.00.

Wilson paid the sixty monthly premiums, but continued to receive premium due notices from defendant. Wilson asked his agent why further premium notices were sent, and was informed that defendant would only maintain the agreed-upon death benefit through age 69 and that the earlier representation was an "illustration." Defendant's letter to Wilson, dated 19 November 1999, restated defendant's position as previously expressed by the agent.

On 2 December 1999, Freeman received a letter informing him that Wilson's policy received a credit as a result of a class action suit

**FREEMAN v. PACIFIC LIFE INS. CO.**

[156 N.C. App. 583 (2003)]

known as *Ace Seat Cover Co., Inc. et al. v. Pacific Life Insurance Company*. According to plaintiffs, this was the first time they became aware of the class action, filed during April of 1997 in Kentucky. The class action included owners of a "vanishing premium" policy sold by defendant. The Kentucky Court ordered a proposed settlement to be sent to all policy holders (1) to inform them of the proposed settlement and the details of the fairness hearing, and (2) to inform each policy owner of the right to opt out of the class action, if notice was given no later than 24 September 1998.

The notice included a release stating that class members who failed to "opt out" could not institute proceedings against defendant relating to "Released Transactions" defined as "the marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, servicing or replacement . . . of the Policies." "Policies" are defined as, "all whole life, universal life and/or variable life insurance policies issued during the period January 1, 1982 through December 31, 1997."

Plaintiffs testified that they never received this notice. Defendant contends that its records show that notice was mailed to the Kenneth Wilson Trust at Freeman's address. Wilson never received any notice, although he had received monthly premium notices at his address for over five years. Defendant contributed $15,770.47 to the accumulated value of Wilson's policy, as a result of the class action settlement.

Plaintiffs filed the present action requesting damages for breach of contract and unfair and deceptive trade practices, and asking for a declaratory judgment regarding the terms of the policy's coverage. Defendant moved for summary judgment on the basis that plaintiffs' suit was barred by the class action. The trial court granted defendant's motion. Plaintiffs appeal.

## II. Issues

The issue is whether the trial court erred in entering summary judgment against plaintiffs on the basis: (1) the Kentucky order precluded their suit and (2) the notice given was sufficient as a matter of law.

## III. Standard of Review

"[T]he standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-*

*Terminix Co. v. Zuring Ins. Co.,* 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

## IV. Preservation of Error

Plaintiffs contend that the trial court erred in granting summary judgment for defendant and argue that: (1) an issue of fact exists whether defendant complied with due process requirements and the notice provisions of the Kentucky court's order and (2) the Kentucky judgment is not entitled to full faith and credit because: (a) procedural requirements have not been met, (b) the record is facially incomplete, (c) the record of the proceedings is ambiguous, and (d) plaintiffs did not receive actual notice of the Kentucky proceedings.

Defendant argues that plaintiffs preserved only one of these errors for appeal. Plaintiffs contended in their motion in opposition to summary judgment only that defendant did not comply with the notice provisions of the Kentucky order. Errors not preserved for appeal are not properly reviewable by this Court. N.C. R. App. P. 10(b) (2002). Because the trial court based its grant of summary judgment on the application of the Full Faith and Credit Clause to the Kentucky judgment and this issue is threshold, we address this question pursuant to our discretion under Rule 2 of the North Carolina Rules of Appellate Procedure.

## V. Full Faith and Credit Clause

[1] The trial court in granting summary judgment, in effect, held that the Full Faith and Credit clause mandates the judgment be given the same effect in North Carolina that it has in Kentucky. "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State." U.S. Const. Art. IV, § 1. "[T]he judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Underwriters Assur. v. North Carolina Life,* 455 U.S. 691, 704, 71 L. Ed. 2d 558, 570 (1982) (internal quotations omitted).

The Full Faith and Credit clause only requires the foreign judgment be given the same force and effect it enjoys in the state where rendered. The law of the rendering court is reviewed to determine whether the judgment is valid. *See Marketing Systems v. Realty Co.,* 277 N.C. 230, 234, 176 S.E.2d 775, 777 (1970). "[T]he judgment from the rendering court must be deemed to have satisfied

certain requisites of a valid judgment before full faith and credit will be granted to it." *Boyles v. Boyles*, 308 N.C. 488, 491, 302 S.E.2d 790, 793 (1983).

## VI. Kentucky Law

Plaintiffs contend that the Kentucky judgment is not entitled to full faith and credit because plaintiff did not receive "actual notice" of the proceedings. Plaintiffs further contend that the issue of notice is for North Carolina courts, citing *White v. Graham*, 72 N.C. App. 436, 325 S.E.2d 497 (1985).

We find *White* distinguishable. The plaintiff in *White* received a petition for divorce, that also requested that the Texas court divide the marital property fairly. *White*, 72 N.C. App. at 440, 325 S.E.2d at 501. Plaintiff had executed a property settlement contract, whose only executory provisions were those which provided for plaintiff's support. *Id.* at 440-41, 325 S.E.2d at 501. Those provisions were valid and binding under both Texas and North Carolina law. *Id.* at 441, 325 S.E.2d at 501. Because "[u]nder Texas law, a property division decree could not affect a valid support agreement, . . ." this Court held that plaintiff lacked notice that the Texas proceedings would involve contractual support obligations. *Id.* Although the discussion over notice cited North Carolina authority, whether notice was sufficient rested upon the Court's analysis of Texas law. *Id.* at 440-41, 325 S.E.2d at 501.

Substantive questions of law "are controlled by the law of the place—the *lex loci;* whereas matters of procedure are controlled by the law of the forum—the *lex fori." Childress v. Motor Lines*, 235 N.C. 522, 524, 70 S.E.2d 558, 560 (1952). Although North Carolina is the forum for the current suit, the validity of the judgment to bar the current action must be reviewed according to the laws of Kentucky.

Kentucky's notice requirements for class actions is set forth in Ky. Rev. Stat. Ann. CR 23.03(2) (2001): "[i]n any class action . . ., the court shall direct to the members of the class the *best notice practicable* under the circumstances, including individual notice to all members who can be identified through reasonable effort." (Emphasis supplied).

The Kentucky court found the "best notice practicable" was to mail notice to all affected policy owners and to publish the notice in newspapers in every state as well as other national newspapers. Defendants presented evidence in the form of affidavits and exhibits

to show that they complied with the notice requirement ordered by the court.

The Kentucky court presiding over the *Ace Seat Cover* class action, specifically found as fact that jurisdiction was proper and that defendant had provided the required notice. Our state Supreme Court has stated that "the second court's scope of review concerning the rendering court's jurisdiction is very limited." *Boyles*, 308 N.C. at 491, 302 S.E.2d at 793. Viewing the evidence in the light most favorable to the plaintiffs, defendant sufficiently complied with the notice provisions to require that the Kentucky judgment be accorded full faith and credit. Plaintiffs' allegations that they did not receive actual notice are irrelevant to the effect of the judgment upon them. The evidence shows and the trial court found that defendant complied with the notice requirements, even though plaintiffs did not allegedly receive actual notice. Defendant mailed the notice to the name and address of the owner listed in the policy application, and had no knowledge it was not received. Defendant was not required by the statute or the court order to contact both Wilson as the insured and Freeman, trustee for the policy-owner trust.

[2] Plaintiffs also argue that the Kentucky judgment is incomplete, ambiguous, and not entitled to full faith and credit. Plaintiffs cite no authority to support their argument that the incomplete record of the foreign judgment at a summary judgment hearing prohibits the trial court from giving it full faith and credit. Plaintiffs contend that ambiguity in the record should prevent according the judgment full faith and credit, relying upon *White v. Graham, supra.*

> An elementary North Carolina rule in the interpretation of judgments is that the pleadings, issues and other circumstances of the case must be considered. *Coach Co. v. Coach Co.*, 237 N.C. 697, 76 S.E.2d 47 (1953); *Berrier v. Commissioners*, 186 N.C. 564, 120 S.E. 328 (1923). . . . And if a judgment is subject to two interpretations, the court will adopt that one which makes it harmonize with the applicable law. *Alexander v. Brown*, 236 N.C. 212, 72 S.E.2d 522 (1952).

*White*, 72 N.C. App. at 441, 325 S.E.2d at 501. The alleged ambiguity questions whether the policy at issue was included in the class certification. Plaintiffs contend that the absence of a copy of the policy in evidence and the fact that the Kentucky class certification does not specifically define whether plaintiffs' policy is affected makes the judgment ambiguous. We disagree.

The Kentucky order sets out the types of policies affected and certified as part of the class. The Kentucky court was not required to list every member of the class. Evidence in the record shows: (1) the defendant found the affected policies, (2) plaintiffs' policy was an affected policy, and (3) defendant gave the policy owners, including Freeman, the notice required by the judge presiding over the class action. We find nothing inherently ambiguous about the Kentucky class certification to preclude according the judgment full faith and credit.

North Carolina courts entertain attacks on foreign judgments on the grounds of lack of jurisdiction, fraud, or public policy issues. *Courtney v. Courtney*, 40 N.C. App. 291, 295-96, 253 S.E.2d 2, 4 (1979). We hold that the Kentucky court had jurisdiction and that plaintiffs produced no evidence showing fraud or contravention of public policy.

## VII. Authentication

[3] Plaintiffs argue that the *Ace Seat Cover* judgment was not authenticated pursuant to 28 U.S.C. § 1738, which governs when judicial proceedings should be given full faith and credit, because it lacks the seal of court, attestation by the clerk, and certificate by the judge. Defendant admits that it did not comply with the requirements of 28 U.S.C. § 1738, but contends that § 1738 is not the exclusive manner to authenticate an out-of-state judgment in North Carolina.

We agree that 28 U.S.C. § 1738 is not the exclusive means to authenticate an out-of-state judgment to be accorded full faith and credit. *See Murphy v. Murphy*, 581 P.2d 489, 492 (Okla. Ct. App. 1978), *Donald v. Jones*, 445 F.2d 601, 606 (5th Cir.), *cert. denied*, 404 U.S. 992, 30 L. Ed. 2d 543 (1971). Rule 44(c) of the N.C. Rules of Civil Procedure states that official records may be authenticated "by any method authorized by any other applicable statute or by the rules of evidence at common law." Here, the judgment was authenticated through the affidavit of attorney Scott Auby. *Home Indemnity Co. v. Hoechst Celanese Corp.*, 128 N.C. App. 189, 199-200, 494 S.E.2d 774, 781, *disc. review denied*, 348 N.C. 71-2, 505 S.E.2d 868-70 (1998).

Plaintiffs argue that defendant did not comply with the Uniform Enforcement of Foreign Judgments Act ("UEFJA") adopted by North Carolina in N.C.G.S. § 1C-1701. The UEFJA is also not the exclusive means by which to enforce a foreign judgment and its applicability to

MRI/SALES CONSULTANTS OF ASHEVILLE, INC. v. EDWARDS PUBL'NS, INC.

[156 N.C. App. 590 (2003)]

the issues at bar is questionable. The UEFJA "provides one method whereby plaintiffs may seek the enforcement in North Carolina of judgments from other states." *Lust v. Fountain of Life, Inc.*, 110 N.C. App. 298, 300, 429 S.E.2d 435, 436 (1993) (citing N.C.G.S. §§ 1C-1701 to -1708 (1991)). The UEFJA applies where a "Judgment Creditor" is attempting to affirmatively enforce a "Foreign Judgment" in our state. *See* N.C.G.S. §§ 1C-1701 to -1708 (2001). At bar, defendant is not seeking action on the judgment but rests on it as a bar to plaintiff's claims. This assignment of error is overruled.

### VIII. Conclusion

We hold that the Kentucky judgment is entitled to full faith and credit. Plaintiffs are barred by the language in the release order portion of the judgment from maintaining this action. The trial court's grant of summary judgment in favor of defendant is affirmed.

Affirmed.

Judges McCULLOUGH and CALABRIA concur.