WILLIAM MOODY, JR., ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED, PLAINTIFF
v. SEARS ROEBUCK AND CO., DEFENDANT

No. COA07-1089

(Filed 15 July 2008)

**1. Class Actions— standing—after settlement of another suit**

Plaintiff Moody was not a party aggrieved by the trial court's actions and lacked standing to appeal in a class action arising from defendant's vehicle alignment services. Plaintiff had presumably received his settlement from defendant in an Illinois action and is now in compliance with the Illinois judge's order directing him to dismiss his North Carolina lawsuit. However, defendant's appeal presents essentially the same issues.

**2. Class Actions— voluntary dismissal—judicial approval—precertification**

The trial court erred by concluding that plaintiff Moody was required to obtain judicial approval under N.C.G.S. § 1A-1, Rule 23(c) before obtaining a voluntary dismissal of his class-action complaint where the class had not yet been certified. Plaintiff Moody sought the dismissal after participation in an Illinois class-action on the same subject, but the North Carolina judge had concerns about the fairness of the settlement.

**3. Class Actions— voluntary dismissal—court's authority—precertification—settlement in another state**

Although a trial court does not derive any precertification supervisory authority under N.C.G.S. § 1A-1, Rule 23(c), this does not imply that a trial court wholly lacks authority to review a motion for precertification dismissal of a class-action complaint. When a plaintiff seeks voluntary dismissal of a precertification class action complaint, the trial court should engage in a limited inquiry to determine whether the parties have abused the class-action mechanism for personal gain, and whether dismissal will prejudice absent putative class members. If neither concern is present, plaintiff is entitled to a voluntary dismissal, but if either or both are present, the trial court retains jurisdiction.

**4. Class Actions— settlement in another state—full faith and credit**

The trial court erred by refusing to accord full faith and credit to an Illinois settlement of a class action suit where the jurisdic-

MOODY v. SEARS ROEBUCK & CO.

[191 N.C. App. 256 (2008)]

tional and due process concerns of the North Carolina court were fully and fairly litigated and finally decided by the Illinois court.

Appeal by Plaintiff and Defendant from orders entered 6 January 2005, 25 January 2005, 3 February 2005, 4 March 2005, and 27 April 2005, and from order and opinion dated 7 May 2007, by Judge Ben F. Tennille in Special Superior Court for Complex Business Cases. Heard in the Court of Appeals 5 March 2008.

*Shipman & Wright, L.L.P., by Gary K. Shipman and William G. Wright, for Plaintiff.*

*Womble Carlyle Sandridge & Rice, PLLC, by Pressly M. Millen and Sean E. Andrussier; McCarter & English, LLP, by Edward J. Fanning, Jr., pro hac vice, for Defendant.*

McGEE, Judge.

The record in this case shows that William Moody, Jr. (Plaintiff Moody) filed a class-action complaint on 20 December 2002 against Sears Roebuck and Co. (Defendant). Plaintiff Moody's complaint alleged that Defendant committed unfair and deceptive trade practices when marketing and performing vehicle wheel alignment services at Sears Auto Centers. Specifically, Plaintiff Moody alleged that Defendant deceptively marketed and sold a four-wheel alignment service to customers whose vehicles only required a two-wheel alignment, and did not offer a less expensive two-wheel alignment service. Plaintiff Moody further alleged that he had been deceived into purchasing an unnecessary and expensive four-wheel alignment for his vehicle, and purported to bring the action on behalf of similarly situated persons. Plaintiff Moody sought certification of the action as a class action under N.C. Gen. Stat. § 1A-1, Rule 23. The Chief Justice of the North Carolina Supreme Court designated the case as a complex business case on 14 July 2003 and assigned Special Superior Court Judge Ben F. Tennille (Judge Tennille) to preside over the case.

Meanwhile, four days after Plaintiff Moody filed his class-action complaint in North Carolina, Michelle Wrobel (the *Wrobel* plaintiff) filed a similar class-action complaint captioned *Wrobel v. Sears Roebuck and Co.* against Defendant in Illinois Circuit Court.[1] Defendant and the *Wrobel* plaintiff began a lengthy mediation process in December 2003 with a retired Illinois judge serving as mediator.

---

1. Counsel for Plaintiff Moody in the case before us also represented the *Wrobel* plaintiff.

The parties eventually reached a settlement and filed a motion in Illinois Circuit Court on 10 September 2004 seeking preliminary approval of their proposed settlement agreement. The proposed settlement agreement established two classes of plaintiffs, one whose members would be eligible to receive a $10.00 check, and one whose members would be eligible to receive a $4.00 transferable Sears coupon. Notice would be provided to class members through publication in Parade Magazine, USA Today Weekend, and newspapers in each of Defendant's top twenty-five markets. Defendant would also maintain a website and a toll-free telephone line that customers could use to access information regarding the settlement. Class members would be required to complete and submit a claim form in order to receive their check or coupon. Class members who wished to opt out of the settlement were permitted to file an opt-out request. Defendant would pay attorneys' fees and costs in the amount of $1,050,000.00 in cash and $50,000.00 in coupons to the various class attorneys. Defendant would also pay each named class representative, including Plaintiff Moody in the North Carolina litigation, a $500.00 payment in recognition of their efforts. The parties also stated in the settlement agreement that the settlement was fair, the *Wrobel* plaintiff would adequately represent the class, the settlement did not overcompensate class counsel, and the proposed notice plan satisfied state and federal due process requirements.

Judge Julia M. Nowicki (Judge Nowicki) entered an order in Illinois Circuit Court on 14 September 2004 granting preliminary approval to the *Wrobel* parties' settlement agreement. In her order, Judge Nowicki conditionally certified the two settlement classes, found the *Wrobel* plaintiff to be an adequate class representative, found class counsel to be adequate, and approved the parties' proposed notice plan. Judge Nowicki also scheduled a fairness hearing to take place on 17 November 2004.

At the time Judge Nowicki granted preliminary approval to the parties' settlement agreement in *Wrobel,* Plaintiff Moody's case in North Carolina Business Court effectively had been stayed pending the outcome of the *Wrobel* mediation. Judge Tennille requested a status report from the parties on 22 October 2004. Counsel for Defendant submitted a status report to Judge Tennille on 3 November 2004 informing Judge Tennille that Judge Nowicki had granted preliminary approval in Illinois Circuit Court to a nationwide class-action settlement that encompassed the claims Plaintiff Moody asserted in the North Carolina action. The status report further stated

that the parties expected Judge Nowicki to grant final approval to the settlement on 17 November 2004, and counsel for Defendant would keep Judge Tennille apprised of any further developments in the case. Counsel for Defendant also provided Judge Tennille with a copy of Judge Nowicki's 14 September 2004 order granting preliminary approval of the proposed settlement in *Wrobel*.

Judge Tennille sent Judge Nowicki a letter on 5 November 2004 expressing concern with multiple aspects of the *Wrobel* settlement. First, Judge Tennille questioned the sufficiency of the notice provided to class members:

> Did [Defendant] not have any records which would have permitted direct notice to those who actually paid for the contested alignments? Why was there no notice posted or provided for in Sears Automotive Centers—the most likely place for Sears customers to be found? Having the notice prominently displayed and claim forms available at the checkout counter seems easy and inexpensive. What about notice to those people who held Sears credit cards or had accounts? An addition to the monthly billing could not have been too expensive. There is at least the appearance that the notice provided was not the most effective means available.

Judge Tennille pointed out that although Defendant published notice in some North Carolina newspapers, there were many large metropolitan areas of North Carolina whose newspapers did not carry notice of the class-action settlement. Second, Judge Tennille expressed concern that the low dollar amount of each class member's individual recovery, coupled with use of coupons and lack of adequate notice, might cause a low claim rate resulting in only minimal benefit to the class. Finally, Judge Tennille worried that "[i]f the claim rate is abysmal—as I believe it will be based on the notice given—the [attorneys'] fee will vastly exceed the class benefit, thus . . . fueling public outrage."

Judge Nowicki held a fairness hearing on 17 November 2004 for final approval of the *Wrobel* parties' proposed settlement. During the hearing, the *Wrobel* parties specifically addressed Judge Tennille's letter to Judge Nowicki and the concerns raised therein. The parties also represented to Judge Nowicki that they estimated the size of the class to be 750,000 to 1.5 million members, and further estimated that thirty percent of class members would file claims. Class counsel further stated to Judge Nowicki:

As of [12 November 2004], there were roughly 1,900 people that had already made claims with literally thousands more inquiries in terms of website, calls, et cetera, but there had already been roughly 1,900 or so people that had already submitted claims, and the claim period has only been running roughly three weeks.

Judge Nowicki issued an order and judgment on 16 December 2004 granting final approval of the *Wrobel* settlement. In her order, Judge Nowicki specifically stated that the notice plan "was the best notice practicable, and complied fully with the requirements of due process, the Constitution of the United States, the laws of the State of Illinois and any other applicable law." Judge Nowicki also stated that there was no evidence of collusion between the *Wrobel* parties, that the settlement did not overcompensate class counsel, and that the settlement was fair, adequate, and reasonable. Finally, Judge Nowicki ordered:

[T]he Court shall retain exclusive and continuing jurisdiction of the Action, all Parties, and Settlement Class Members, to interpret and enforce the terms, conditions and obligations of this Settlement Agreement.

. . . . Any and all Class members who have not timely filed a Request for Exclusion from the Class, and their attorneys, are permanently barred and enjoined from commencing and/or prosecuting in any forum any class action against the Defendant . . . for any claims or potential claims described in the Settlement Agreement. Counsel for members of the Class hereby stipulate to dismissal of any existing suits asserting a Settled Claim and shall execute appropriate stipulations of dismissal with prejudice in said suits.

Pursuant to the *Wrobel* settlement and N.C. Gen. Stat. § 1A-1, Rule 41(a)(1), Plaintiff Moody and Defendant filed a stipulation of voluntary dismissal with prejudice in North Carolina Superior Court on 29 December 2004. Judge Tennille issued an order on 6 January 2005 informing the parties that under N.C.G.S. § 1A-1, Rule 23(c), they could not receive a voluntary dismissal of a class-action complaint without court approval. Judge Tennille filed another order on 25 January 2005 tentatively approving the parties' voluntary dismissal. However, Judge Tennille ordered that such approval was subject to the following conditions:

Counsel for [Plaintiff Moody] and [D]efendant shall file with this Court a final accounting which shall contain the total number of

claims filed, the total number of claims paid in cash and by coupon (stated separately), the total benefit actually distributed to the class, the total benefit actually distributed to claimants in North Carolina, the administrative costs and the total payment of fees and expenses to [Plaintiff Moody's] counsel.

Judge Tennille directed the parties to file this accounting within thirty days of the close of the claims period, and stated that "[t]he Court retains jurisdiction of this case [pending] compliance with this order and any further order of the Court."

Counsel for Plaintiff Moody wrote a letter to Judge Tennille on 28 January 2005 in response to Judge Tennille's order requesting a final accounting. Counsel asserted that Judge Nowicki's final order in *Wrobel* was entitled to full faith and credit in North Carolina, and also claimed that Judge Tennille lacked jurisdiction to proceed in the *Moody* case. Counsel therefore asked that Judge Tennille close the court's file on the *Moody* case and require nothing further from the parties. Defendant likewise filed a motion to dismiss the *Moody* case and to vacate all orders entered by Judge Tennille following Judge Nowicki's 16 December 2004 order granting final approval of the *Wrobel* settlement. Judge Tennille scheduled a hearing on Defendant's motion for 17 March 2005.

Prior to this hearing, Plaintiff Moody filed a petition for writ of mandamus, writ of prohibition, writ of supersedeas, and a motion for a temporary stay with this Court on 10 March 2005 to prevent Judge Tennille from taking further action with respect to the *Moody* case. Our Court issued an order on 11 March 2005 granting a temporary stay and directing Judge Tennille to file a response to Plaintiff Moody's writ petition. Judge Tennille filed a response to Plaintiff Moody's petition on 23 March 2005. Our Court issued an order on 5 April 2005 denying Plaintiff Moody's petition and dissolving the temporary stay.

Judge Tennille held a hearing on 29 April 2005 to address all pending matters related to the *Moody* case, including his request for a final accounting. The parties submitted the final accounting to Judge Tennille at this hearing. The accounting reflected that during the entire claims period, only 1,015 claims were filed with respect to the settlement. Of those claims, 317 were valid. Of the 317 valid claims, 189 claimants were entitled to a $10.00 check, and 128 claimants were entitled to a $4.00 coupon, for a total nationwide settlement payout of $2,402.00. Forty claims were filed from North Carolina claimants.

Nine of those claims were valid, and included five claimants entitled to a $10.00 check and four claimants entitled to a $4.00 coupon, for a total payout of $66.00 to North Carolina class members.

Upon receipt of this information, Judge Tennille sent a letter to Judge Nowicki on 3 May 2005 stating that the result of the *Wrobel* settlement was "simply unjust" and that "[t]he public will rightly be outraged at the result." Judge Tennille also expressed his concern that class counsel in *Wrobel* had obtained Judge Nowicki's approval for the settlement by misrepresenting to her at the 17 November 2004 hearing that 1,900 claims had already been filed by that date, when in fact, the parties' final accounting to Judge Tennille disclosed that approximately 339 claims had been filed at that time, most of which were invalid. Class counsel and counsel for Defendant both sent letters to Judge Nowicki on 6 May 2005 responding to Judge Tennille's concerns and allegations. Judge Nowicki held a hearing on the matter and issued an order on 10 August 2005 finding that the misstatement by counsel for the *Wrobel* plaintiff "was inadvertent and . . . the settlement in this case was not procured by fraud or misrepresentation to the Court."

Judge Tennille issued a final order and opinion in the *Moody* case on 7 May 2007. In the order, Judge Tennille concluded that "(1) the [*Wrobel*] settlement was approved based upon erroneous information supplied by counsel, (2) the notice procedures in the *Wrobel* case did not meet constitutionally mandated due process, and (3) representation of the class was inadequate[.]" Judge Tennille therefore "refuse[d] to extend full faith and credit to Judge Nowicki's [16 December 2004] Approval Order." Judge Tennille then dismissed Plaintiff Moody's individual claim against Defendant with prejudice, and dismissed the class action allegations without prejudice. Plaintiff Moody and Defendant both appeal from each of the various orders entered by Judge Tennille subsequent to Judge Nowicki's 16 December 2004 order granting final approval of the *Wrobel* settlement.

I.

[1] Before we consider the merits of the parties' appeals, we address, *sua sponte*, the issue of Plaintiff Moody's standing to bring his appeal. Under N.C.R. App. P. 3(a), "[a]ny party entitled by law to appeal from a judgment or order of a superior or district court rendered in a civil action or special proceeding may take appeal[.]" Further, N.C. Gen. Stat. § 1-271 (2007) provides that "[a]ny party aggrieved" is entitled to

MOODY v. SEARS ROEBUCK & CO.

[191 N.C. App. 256 (2008)]

appeal in a civil action. A "party aggrieved" is "one whose rights have been directly or injuriously affected by the action of the [trial] court." *Bailey v. State*, 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000).

In their 29 December 2004 stipulation of voluntary dismissal, Plaintiff Moody and Defendant sought a voluntary dismissal of Plaintiff Moody's complaint, with prejudice. The trial court in fact dismissed Plaintiff Moody's individual claims, with prejudice, in its 7 May 2007 order. Plaintiff Moody thus received the relief he requested, albeit some twenty-eight months after his request. Counsel for Plaintiff Moody argues that while Plaintiff Moody is not "aggrieved" with respect to his personal claims, Plaintiff Moody was injuriously affected by the trial court's actions because the trial court refused to accord full faith and credit to the *Wrobel* settlement, and Plaintiff Moody was a member of the plaintiff class in *Wrobel*.

We hold that Plaintiff Moody is not a "party aggrieved" by the trial court's actions, and therefore lacks standing to bring his appeal. Plaintiff Moody presumably received his settlement from Defendant in *Wrobel*, and is now in compliance with Judge Nowicki's 16 December 2004 order directing him to dismiss his North Carolina lawsuit. The trial court's 7 May 2007 order, if it remains in effect, would allow other North Carolina residents to sue Defendant on claims encompassed by the *Wrobel* settlement. Plaintiff Moody's rights are not "directly or injuriously affected" merely because Defendant remains open to such claims. We therefore dismiss Plaintiff Moody's appeal.[2]

## II.

[2] Defendant first argues in its appeal that the trial court lost jurisdiction over Plaintiff Moody's claims upon Judge Nowicki's 16 December 2004 entry of a final order approving the *Wrobel* settlement. Defendant notes that "[j]urisdiction in North Carolina depends on the existence of a justiciable case or controversy." *Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 164, 552 S.E.2d 220, 225 (2001), *disc. review denied*, 356 N.C. 161, 568 S.E.2d 191 (2002). According to Defendant, Plaintiff Moody had no justiciable claim to prosecute as of 16 December 2004 because he agreed, pursuant to the

---

2. Our dismissal of Plaintiff Moody's appeal has no practical effect on our review of the trial court's orders because Defendant's appeal presents essentially the same issues and arguments as does Plaintiff Moody's appeal. Further, Plaintiff Moody remains a party to Defendant's appeal, and both parties agree on all issues material to Defendant's appeal.

*Wrobel* settlement, to release his claim and dismiss the North Carolina action. Therefore, the trial court was required to grant Plaintiff Moody's Rule 41(a)(1) motion for a voluntary dismissal. *See Simeon v. Hardin*, 339 N.C. 358, 370, 451 S.E.2d 858, 866 (1994) (stating that "[w]henever during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed"). The trial court, however, asserted that even following the resolution of *Wrobel*, the trial court retained jurisdiction under N.C.G.S. § 1A-1, Rule 23(c) to approve or deny Plaintiff Moody's request for a voluntary dismissal.

Whether a trial court had jurisdiction to enter an order is a question of law that we review *de novo. See, e.g., Childress v. Fluor Daniel, Inc.*, 172 N.C. App. 166, 167, 615 S.E.2d 868, 869 (2005). A question of statutory construction is also a question of law that we review *de novo. See, e.g., Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 605, 615 S.E.2d 350, 357, *disc. review denied*, 360 N.C. 63, 623 S.E.2d 582 (2005).

A.

N.C.G.S. § 1A-1, Rule 23(c) provides:

> *Dismissal or compromise.*—A class action shall not be dismissed or compromised without the approval of the judge. In an action under this rule, notice of a proposed dismissal or compromise shall be given to all members of the class in such manner as the judge directs.

Defendant argues that Rule 23(c) only applies to cases in which the trial court has certified a class, thereby creating a "class action." Plaintiff Moody's lawsuit, while it contained both individual and class claims, never proceeded to the class-certification stage. Therefore, according to Defendant, the trial court had no jurisdiction under Rule 23(c) to approve the parties' motion for a voluntary dismissal.

Our State's Rule 23(c) is similar to the pre-2003 version of the analogous federal rule. *See* Fed. R. Civ. P. 23(e) (2002) ("A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."). Prior to 2003, there existed a split in authority concerning whether Federal Rule 23(e) applied prior to class certification. A majority of federal circuits considering the issue held that

former Federal Rule 23(e) did apply both pre-certification and post-certification. *See Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989); *Glidden v. Chromalloy American Corp.*, 808 F.2d 621, 625-27 (7th Cir. 1986); *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir. 1970), *cert. denied*, 398 U.S. 950, 26 L. Ed. 2d 290 (1970). The United States Court of Appeals for the Fourth Circuit, however, held that a "class action" only exists after a class has been certified, and therefore former Federal Rule 23(e) only applied post-certification. *See Shelton v. Pargo*, 582 F.2d 1298, 1302-04 (4th Cir. 1978).[3] North Carolina Courts have not previously determined whether our own Rule 23(c) applies pre-certification.[4]

The North Carolina Supreme Court has noted that

"[t]he primary goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute." The first step in determining a statute's purpose is to examine the statute's plain language. "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning."

*State v. Hooper*, 358 N.C. 122, 125, 591 S.E.2d 514, 516 (2004) (citation omitted) (quoting *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 574, 573 S.E.2d 118, 121 (2002); *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990)). Black's Law Dictionary defines a "class action" as "[a] lawsuit in which *the court authorizes* a single person or a small group of people to represent the interests of a larger group." Black's Law Dictionary 267 (8th ed. 2004) (emphasis added). This definition suggests that a lawsuit containing class allegations must receive judicial authorization, or class certification, before it can be considered a "class action." Our Supreme Court has also suggested that a lawsuit cannot acquire "class action" status until the named plaintiffs have undergone the class-certification procedure. *See Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 282-84, 354 S.E.2d 459, 465-66 (1987) (noting that even when a complaint contains class allegations, the named plaintiffs "may maintain th[e] action as a

---

3. Congress amended Federal Rule 23(e) in 2003 to resolve this discrepancy in favor of the Fourth Circuit's view. *See* Fed. R. Civ. P. 23(e) (2004) ("The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a *certified class*." (emphasis added)).

4. The appellant in *Alexander v. DaimlerChrysler Corp.*, 158 N.C. App. 637, 582 S.E.2d 57 (2003) did argue that Rule 23(c) only applied post-certification. However, our Court held that the appellant was not entitled to appellate review of that issue, and we therefore declined to address the appellant's statutory argument. *See id.* at 641-42, 582 S.E.2d at 60.

class action" only if they demonstrate to the trial court that they have satisfied the various requirements for using the class-action procedure, and if the trial court then decides in its discretion to permit the lawsuit to proceed as a class action).

In addition to North Carolina case law, "since the [F]ederal . . . [R]ules [of Civil Procedure] are the source of [the North Carolina Rules of Civil Procedure], we will look to the decisions of [federal courts] for enlightenment and guidance" in determining the meaning of "class action." *Sutton v. Duke*, 277 N.C. 94, 101, 176 S.E.2d 161, 165 (1970). While the United States Supreme Court has not explicitly determined the meaning of "class action" under former Federal Rule 23(e), a number of that Court's decisions contain language suggesting that class certification was a prerequisite for application of that rule. *See Sosna v. Iowa*, 419 U.S. 393, 399 n.8, 42 L. Ed. 2d 532, 540 n.8 (1975) (stating that "[o]nce [a] *suit is certified as a class action*, it may not be settled or dismissed without the approval of the court [under] Rule 23 (e)" (emphasis added)); *cf. Pasadena City Bd. of Education v. Spangler*, 427 U.S. 424, 430, 49 L. Ed. 2d 599, 605 (1976) (rejecting the argument that actual certification of a class is a "meaningless 'verbal recital' " that has no effect on whether a lawsuit is a class action); *Baxter v. Palmigiano*, 425 U.S. 308, 310 n.1, 47 L. Ed. 2d 810, 817 n.1 (1976) (stating that "[w]ithout . . . certification and identification of the class, [an] action is not properly a class action").

The Fourth Circuit in *Shelton* relied on this language to hold that former Federal Rule 23(e) unambiguously applied to only post-certification class-action lawsuits. In *Shelton*, the plaintiff sought to dismiss her class-action complaint after reaching a settlement with the defendant. *Shelton*, 582 F.2d at 1301. The trial court approved the dismissal with qualifications and directed that notice be provided to all putative class members pursuant to former Federal Rule 23(e). *Id.* Relying on *Sosna* and *Baxter*, the Fourth Circuit rejected the trial court's interpretation of former Federal Rule 23(e):

[Former Federal] Rule 23(e) does not apply to any action simply because it was begun as a class action. By its explicit language, [former Federal] Rule 23(e) is confined in operation to the settlement and dismissal of a "class action."

. . . . It is the actual certification of the action as a class action . . . which alone gives birth to "the class as a jurisprudential entity," changes the action from a mere individual suit with class

allegations into a true class action . . . , and provides that sharp line of demarcation between an individual action seeking to become a class action and an actual class action.

*Id.* at 1303-04 (citation and footnotes omitted).

We find the Fourth Circuit's reasoning in *Shelton* persuasive, and hold that the requirements of our own Rule 23(c) do not apply to pre-certification class-action complaints. Therefore, we hold that the trial court erred in concluding that Plaintiff Moody was required to obtain judicial approval under Rule 23(c) before obtaining a voluntary dismissal of his class-action complaint.[5]

## B.

**[3]** While we hold that a trial court does not derive any pre-certification supervisory authority under Rule 23(c), our holding does not imply that a trial court wholly lacks authority to review a motion for pre-certification dismissal of a class-action complaint.

Although the Fourth Circuit in *Shelton* found former Federal Rule 23(e) inapplicable pre-certification, the Court also recognized the danger in allowing named plaintiffs to settle their individual claims for hefty sums and then dismiss their class-action complaint with no judicial oversight:

[B]y asserting a representative role on behalf of the alleged class, [the named plaintiffs] voluntarily accept[] a fiduciary obligation towards the members of the putative class they thus have undertaken to represent. They may not abandon the fiduciary role they assumed . . . if prejudice to the members of the class they claimed to represent would result or if they have improperly used the class[-]action procedure for their personal aggrandizement.

*Shelton*, 582 F.2d at 1305 (footnote omitted). The Court noted that Fed. R. Civ. P. 23(d) grants federal courts broad powers to conduct class-action litigation. *Id.* at 1306; *see* Fed. R. Civ. P. 23(d) (2008) (granting trial courts broad powers in class-action litigation to control the trial proceedings, require notice to class members, impose

---

5. We acknowledge that the North Carolina Business Court has previously held that Rule 23(c) applies pre-certification. *See Lupton v. Blue Cross and Blue Shield of N.C.*, 1999 NCBC LEXIS 3, *20 (1999). The *Lupton* Court, however, reached this conclusion not by interpreting the plain language of N.C.G.S. § 1A-1, Rule 23(c), but rather by weighing the policy considerations in favor of that specific construction of the statute. *See id.* at *5-*20. Because we find that the language of Rule 23(c) unambiguously applies only to post-certification class-action lawsuits, we decline to adopt *Lupton* as persuasive authority in this case.

conditions on the representative parties, and handle various other procedural matters). The Court then held that in order to curb abuse and to protect absent class members, the trial court

> should have both the power and the duty, in view of its supervisory power over and its special responsibility in actions brought as class actions, as set forth in [Federal Rule] 23(d), to see that the representative party does nothing . . . in derogation of the fiduciary responsibility he has assumed, which will prejudice unfairly the members of the class he seeks to represent. Apart, then, from . . . [former Federal Rule] 23(e) . . . the [trial court] would appear to have an ample arsenal to checkmate any abuse of the class action procedure[.]

*Shelton*, 582 F.2d at 1306 (footnotes omitted). The Court concluded that before allowing voluntary dismissal of a pre-certification class-action complaint, a trial court should "determine whether the proposed settlement and dismissal are tainted by collusion or will prejudice absent putative [class] members," in which case the trial court could take appropriate action. *Id.* at 1315-16.

North Carolina does not have a counterpart to Federal Rule 23(d). However, our case law establishes a clear judicial policy of allowing trial courts broad discretion in matters pertaining to class-action lawsuits. *See, e.g., Frost v. Mazda Motors of Am., Inc.*, 353 N.C. 188, 198, 540 S.E.2d 324, 331 (2000) (stating that "the touchstone for appellate review of a Rule 23 order, whether it emanates from a federal or a North Carolina court, is to honor the 'broad discretion' allowed the trial court in all matters pertaining to class certification"); *Crow*, 319 N.C. at 284, 354 S.E.2d at 466 (noting that even if a plaintiff meets the requirements for class certification, the decision whether to certify the class "continues to be a matter left to the trial court's discretion. . . . [T]he trial court has broad discretion in this regard and is not limited to consideration of matters expressly set forth in Rule 23."); *Gibbons v. Cit Group/Sales Financing*, 101 N.C. App. 502, 507, 400 S.E.2d 104, 107, *disc. review denied*, 329 N.C. 496, 407 S.E.2d 856 (1991) (noting that trial courts have a "duty to maintain control over [class-action] litigation," a "responsibility to control the way in which [a] case proceeds," and discretion to determine "how best to proceed with the litigation").

Further, although Federal Rule 23(d) has no counterpart in our State, our Courts have relied on federal case law interpreting that rule when discussing the breadth of trial court discretion in North

**MOODY v. SEARS ROEBUCK & CO.**

[191 N.C. App. 256 (2008)]

Carolina class-action litigation. *See id.* at 506, 400 S.E.2d at 106 (finding persuasive the logic of federal case law concerning trial court discretion under Federal Rule 23(d)); *see also Frost*, 353 N.C. at 196-97, 540 S.E.2d at 329-30 (citing *Gibbons* for the proposition that although North Carolina has no analogue to Federal Rule 23(d), our Courts may nonetheless treat federal case law concerning Federal Rule 23(d) as persuasive authority where appropriate).

We find the Fourth Circuit's reasoning in *Shelton* persuasive in the present case. Without some level of pre-certification court supervision, there is an unacceptable risk that parties may abuse the class-action mechanism in myriad ways. For example,

> defendants faced with a class action may be encouraged to try to avoid class resolution of claims by buying off individual named plaintiffs. These defendants could settle with strong class plaintiffs, and proceed with a class action when faced with weak or ineffectual named plaintiffs. In some situations, the defendants may be able to forum shop settling claims brought in undesirable forums. The other side of the coin is that plaintiffs with small claims may try to use class allegations to coerce unusually generous individual settlements from defendants.

5 Moore's Federal Practice § 23.64[2][a] (3d. ed 2008). Parties with such motives will be less likely to abuse the class-action mechanism if they know that a voluntary dismissal will be subject to the trial court's review. Further, when a plaintiff files a class-action complaint, the plaintiff has set out to the world a willingness to assume the role of a representative in a class-action lawsuit. Although the class is not yet certified, putative class members may rely on the named plaintiff's stated intentions to represent the class. Under such circumstances, trial courts have a duty to assure that putative class members will not be prejudiced, procedurally or otherwise, by voluntary dismissal of the class-action complaint.

We therefore hold that when a plaintiff seeks voluntary dismissal of a pre-certification class-action complaint, the trial court should engage in a limited inquiry to determine (a) whether the parties have abused the class-action mechanism for personal gain, and (b) whether dismissal will prejudice absent putative class members.[6] If

---

6. Because Rule 23(c) does not apply to the trial court's inquiry at this stage of the litigation, this approach allows the trial court to conduct pre-certification review "without imposing on the [trial] court the laborious duty in such a case to conduct a certification determination or to give notice to absentee class members." *Shelton*, 582 F.2d at 1311.

the trial court finds that neither of these concerns are present, the plaintiff is entitled to a voluntary dismissal. However, if the trial court finds that one or both of these concerns are present, it retains discretion to address the issues.[7] *See Shelton*, 582 F.2d at 1314, 1315-16. To the extent the trial court's post-16 December 2004 orders encompassed this type of limited inquiry, the trial court did not err by issuing such orders.

## III.

[4] In its 7 May 2007 order, the trial court found that the parties had indeed abused the class-action mechanism for their personal gain. According to the trial court, "[t]he shocking incongruity between class benefit and the fees afforded counsel and [the named plaintiffs] leave the appearance of collusion[.]" The trial court further charged, *inter alia*, that the *Wrobel* settlement "was based on erroneous information supplied to the Illinois court by counsel for [the *Wrobel* plaintiff] and acquiesced in by Defendant's nationwide counsel." In addition to its findings on abuse of the class-action mechanism, the trial court found that recognition of the *Wrobel* settlement as binding on North Carolina class members, and dismissal of Plaintiff Moody's class allegations with prejudice, would prejudice North Carolina class members due to various due process concerns with the *Wrobel* settlement. Specifically, the trial court found that the entire notice plan in *Wrobel* fell short of constitutional requirements, and that the representation provided by class counsel in *Wrobel* was wholly inadequate.

As discussed in Part II above, trial courts generally have authority to conduct a limited inquiry when reviewing a pre-certification motion to dismiss a class-action complaint. Defendant argues, however, that this inquiry is largely circumscribed where, as in the present case, a foreign court has already issued findings and conclusions addressing those same questions.

## A.

The United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. Congress has further provided that "[t]he records and judicial pro-

---

7. For example, the trial court may hold a certification hearing, certify the class if appropriate, and order that notice be given to class members. *See Shelton*, 582 F.2d at 1316. The parties may then again seek dismissal subject to the trial court's approval under Rule 23(c).

MOODY v. SEARS ROEBUCK & CO.

[191 N.C. App. 256 (2008)]

ceedings of any court of any . . . State . . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738 (2007). Full faith and credit principles extend to class-action litigation. *See Matsushita Elec. Indus. v. Epstein*, 516 U.S. 367, 374, 134 L. Ed. 2d 6, 17 (1996) (holding that "a judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of [28 U.S.C. § 1738]").

A state's duty to accord full faith and credit to an out-of-state judgment is, however, subject to certain limitations. For example, a state is not required to give full faith and credit to a constitutionally infirm foreign judgment. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 482, 72 L. Ed. 2d 262, 281 (1982). Further, a state is not required to give full faith and credit to a foreign judgment if the foreign court lacked jurisdiction to render the judgment. *Underwriters Assur. v. North Carolina Life*, 455 U.S. 691, 704, 71 L. Ed. 2d 558, 570 (1982). In light of these exceptions, the reviewing court may inquire as to the legitimacy of the foreign court's judgment. *See, e.g., id.* at 705, 71 L. Ed. 2d at 570-71 (stating that "before a court is bound by [a] judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree").

Courts differ, however, as to the scope of collateral review of a foreign court's conclusions regarding due process issues such as sufficiency of notice and adequacy of representation in class-action lawsuits. Some courts hold that the reviewing court may not "reconsider[] . . . the merits of the claim or issue," but rather may only consider whether absent class members' due process rights were "protected by the adoption of the appropriate *procedures* by the certifying court," in which case the original judgment is entitled to full faith and credit. *Epstein v. MCA, Inc.*, 179 F.2d 641, 648-49 (9th Cir. 1999), *cert. denied*, 528 U.S. 1004, 145 L. Ed. 2d 384 (1999); *see also, e.g., Fine v. Am. Online, Inc.*, 743 N.E.2d 416, 420-24 (Ohio App. 2000), *review denied*, 736 N.E.2d 24 (Ohio 2000), *cert. denied*, 532 U.S. 942, 149 L. Ed. 2d 346 (2001); *Lamarque v. Fairbanks Capital Corp.*, 927 A.2d 753, 760-65 (R.I. 2007); *Hospitality Management v. Shell Oil Co.*, 591 S.E.2d 611, 619 (S.C. 2004), *cert. denied*, 543 U.S. 916, 160 L. Ed. 2d 200 (2004). Other courts allow broader collateral review of the merits of the rendering court's due process determinations. *See, e.g., Stephenson v. Dow Chemical Co.*, 273 F.3d 249, 257-59 (2d Cir. 2001), *aff'd in pertinent part by equally divided*

*Court*, 539 U.S. 111, 156 L. Ed. 2d 106 (2003) (per curiam) (Stevens, J., not participating); *State v. Homeside Lending, Inc.*, 826 A.2d 997, 1016-17 (2003).

North Carolina Courts have adopted a "very limited" scope of review of foreign courts' determinations of jurisdictional questions. *Boyles v. Boyles*, 308 N.C. 488, 491, 302 S.E.2d 790, 793 (1983). Where the foreign judgment contains only mere recitals regarding the foreign court's jurisdiction over the parties and claims, our Courts have allowed an "independent inquiry into the jurisdiction of the court which rendered the judgment." *Hosiery Mills v. Burlington Industries*, 285 N.C. 344, 352-53, 204 S.E.2d 834, 840 (1974). However, our Courts are bound by the foreign judgment where the record reveals that the jurisdictional issues were "fully litigated in, and determined by, the court which rendered the judgment." *Id.* at 353, 204 S.E.2d at 840; *see* also Boyles, 308 N.C. at 491, 302 S.E.2d at 793 (stating that "a judgment is entitled to full faith and credit . . . when the second court's inquiry discloses that [the questions at issue] have been fully and fairly litigated and finally decided in the court which rendered the judgment" (quoting *Underwriters*, 455 U.S. at 706, 71 L. Ed. 2d at 571-72 (quotation omitted))).[8]

Our Court has applied a similarly limited review when considering due process conclusions in foreign class-action judgments. In *Freeman v. Pacific Life Ins. Co.*, 156 N.C. App. 583, 577 S.E.2d 184 (2003), for example, the plaintiffs filed a complaint against the

---

8. The trial court correctly noted in its 7 May 2007 order that in both *Boyles* and *Hosiery Mills*, our Supreme Court ultimately conducted a *de novo* review of the foreign courts' jurisdiction over the North Carolina parties, determined in each case that the foreign court lacked such jurisdiction, and therefore refused to accord full faith and credit to those courts' orders. *See Boyles*, 308 N.C. at 494-500, 302 S.E.2d at 795-98; *Hosiery Mills*, 285 N.C. at 355-57, 204 S.E.2d at 841-43. However, the Supreme Court determined that broad collateral review was appropriate in those cases specifically because the North Carolina parties were absent from and not represented in the prior litigation, and therefore never actually litigated the jurisdictional or notice questions at issue. *See Boyles*, 308 N.C. at 492, 302 S.E.2d at 793 (allowing broader collateral review when "a party against whom a *default judgment* was entered subsequently challenges the validity of the original proceeding on the grounds that he did not receive adequate notice" (emphasis added)); *Hosiery Mills*, 285 N.C. at 355, 204 S.E.2d at 841 (allowing broader collateral review where the challenging party did not appear or participate in, and was not represented in, the foreign proceedings). In contrast, the North Carolina class members in the present case were represented by class counsel in *Wrobel*. Further, as discussed below, class counsel in *Wrobel* did actually litigate all relevant jurisdictional and due process issues on behalf of the *Wrobel* class. Therefore, neither *Boyles* nor *Hosiery Mills* support broad collateral review of the *Wrobel* judgment in this case.

MOODY v. SEARS ROEBUCK & CO.

[191 N.C. App. 256 (2008)]

defendant life insurance company alleging breach of contract and unfair and deceptive trade practices. *Id.* at 585, 577 S.E.2d at 186. The plaintiffs' claims were encompassed in a prior class-action settlement in Kentucky, and the plaintiffs' life insurance policy had received a credit as a result of the Kentucky settlement. *Id.* at 584-85, 577 S.E.2d at 185. However, the plaintiffs argued that the Kentucky settlement was not entitled to full faith and credit in North Carolina because the plaintiffs never received actual notice of the proposed settlement, the fairness hearing, or their right to opt out of the settlement. *Id.* at 585, 587, 577 S.E.2d at 185-86, 187. The plaintiffs further alleged that the notice given in the Kentucky litigation did not meet due process standards. *Id.* at 586, 577 S.E.2d at 186. On appeal, our Court rejected the plaintiffs' contention that "the issue of notice is for North Carolina courts[.]" *Id.* at 587, 577 S.E.2d at 187. Rather, we limited our inquiry to whether the due process and jurisdictional issues had already been litigated in and determined by the Kentucky court. The record revealed that "[t]he Kentucky court . . . specifically found as fact that jurisdiction was proper and that [the] defendant had provided the required notice [under Kentucky law]." *Id.* at 588, 577 S.E.2d at 187. Therefore, our Court held that the Kentucky judgment was entitled to full faith and credit, thus barring the plaintiffs' claims. *Id.* at 590, 177 S.E.2d at 189.

Our Courts' "limited review" approach is consistent with United States Supreme Court case law. *See, e.g., Matsushita,* 516 U.S. at 378-79, 134 L. Ed. 2d at 20-21 (finding that a foreign judgment met due process requirements by referencing the foreign court's findings on those issues, rather than by conducting an independent review). This type of limited review serves important judicial interests in the efficiency and finality of class-action litigation, and ensures that no "waste of judicial resources" occurs by reason of "reviewing courts . . . conduct[ing] an extensive substantive review when one has already been undertaken in a sister state." *Hospitality Management,* 591 S.E.2d at 619. Further, "second-guessing the fully [-]litigated decisions of our sister courts would violate the spirit of full faith and credit," *id.,* and could make North Carolina the jurisdiction of choice for plaintiffs wishing to launch collateral challenges to other states' judicial proceedings. *See also Fine,* 743 N.E.2d at 420-22 (discussing policy considerations that weigh in favor of limited collateral review). While North Carolina courts surely have an important interest in not enforcing constitutionally infirm foreign judgments, the appropriate manner of correcting foreign trial court errors is "by

appeal within the [foreign] state system and by direct review in the United States Supreme Court." *Epstein*, 179 F.3d at 648.

B.

Defendant argues that, based on the principles outlined above, the trial court erred by undertaking a broad collateral review of Judge Nowicki's 16 December 2004 order and by refusing to accord full faith and credit to that order. We agree.

The record in the current case reveals that the due process and jurisdictional questions addressed in the trial court's 7 May 2007 order had already been heard and answered in Illinois Circuit Court. Moreover, the record reveals that Judge Nowicki's various conclusions were more than mere recitals regarding the rendering court's jurisdiction, *see Hosiery Mills*, 285 N.C. at 352-53, 204 S.E.2d at 840, and that Judge Nowicki reached these conclusions after following procedures designed to protect absent class members' due process rights. *See Epstein*, 179 F.2d at 648.

To begin, the *Wrobel* parties engaged in approximately eight months of settlement negotiations mediated by a retired Illinois judge. The parties then submitted a proposed settlement to the Illinois Circuit Court that included substantial legal analysis of the relevant due process issues. Judge Nowicki reviewed the proposal, entered an order on 14 September 2004 granting preliminary approval to the *Wrobel* settlement agreement, and scheduled a fairness hearing. Prior to the fairness hearing, the parties filed additional documents with the Illinois Court that addressed the due process aspects of the proposed settlement. Further, Judge Nowicki received a letter from Judge Tennille on 5 November 2004 expressing concern regarding jurisdictional and due process issues related to the *Wrobel* settlement. Two weeks later at the 17 November 2004 fairness hearing, Judge Nowicki questioned the parties extensively regarding the settlement negotiations, notice plan, potential class benefit, and attorneys' fees. Judge Nowicki also discussed Judge Tennille's letter with the parties and asked the parties to respond to Judge Tennille's concerns. Further, the retired Illinois judge who mediated the *Wrobel* settlement spoke at the fairness hearing regarding the validity of the settlement negotiations and the adequacy of class benefit, class counsel, and attorneys' fees.

After considering all the relevant information, Judge Nowicki entered an order and judgment on 16 December 2004 granting final

MOODY v. SEARS ROEBUCK & CO.

[191 N.C. App. 256 (2008)]

approval to the *Wrobel* settlement. After reviewing the proposed notice plan, Judge Nowicki found that the plan "constituted valid, due and sufficient notice to all members of the Settlement Class, was the best notice practicable, and complied fully with the requirements of due process, the Constitution of the United States, the laws of the State of Illinois and any other applicable law." Judge Nowicki also discussed the *Wrobel* parties' settlement negotiations, found "no evidence of collusion between Sears and Class Counsel," and concluded that "[t]he Settlement Agreement [was] the product of informed and non-collusive negotiations[.]" Judge Nowicki likewise examined the potential class benefit, class representative fees, and attorneys' fees, and after a lengthy analysis, found them all to be satisfactory.

Finally, Judge Nowicki continued to consider and address these and other due process issues even following her final approval of the *Wrobel* settlement. Judge Nowicki received a letter from Judge Tennille on 3 May 2005 expressing concern with the final accounting in the *Wrobel* litigation as well as potential misrepresentations made to Judge Nowicki by class counsel. Judge Nowicki wrote a letter to Judge Tennille the following day stating that she appreciated the information and would consider whether to take corrective action. After considering Judge Tennille's concerns, Judge Nowicki held a hearing and entered an order on 10 August 2005 stating that "[t]he Court remains satisfied that [class counsel's] misstatement was inadvertent and that the settlement in [*Wrobel*] was not procured by fraud or misrepresentation to the Court."

Based on this record, we find that the jurisdictional and due process conclusions contained in the trial court's 7 May 2007 order were "fully and fairly litigated and finally decided" in Illinois Circuit Court. *Boyles*, 308 at 491, 302 S.E.2d at 793 (quoting *Underwriters*, 455 U.S. at 706, 71 L. Ed. 2d at 572 (quotation omitted)). This finding concludes our review and forecloses any reconsideration of the merits of the legal issues decided by the Illinois Circuit Court in *Wrobel*. While we share the trial court's serious concerns regarding the final accounting in the *Wrobel* settlement, we are constrained to hold that the trial court erred by refusing to accord full faith and credit to the *Wrobel* settlement. We therefore reverse the trial court's 7 May 2007 order and remand this case to the trial court with instructions to dismiss the class-action allegations with prejudice.

In Plaintiff's appeal we dismiss.

In Defendant's appeal we reverse and remand.

Judges TYSON and STEPHENS concur.