Gateway Mgmt. Servs., LTD. v. Carrbridge Berkshire Grp., Inc., 2018 NCBC 43.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 5275

GATEWAY MANAGEMENT
SERVICES, LTD., d/b/a PREMIUM
2000+,

Plaintiff,

v.

CARRBRIDGE BERKSHIRE
GROUP, INC. a/k/a CARRBRIDGE
BERKSHIRE CORPORATION;
TRUNORTH WARRANTY PLANS
OF NORTH AMERICA, LLC;
CARRBRIDGE FIDELITY, LLC; and
COMPASSONE WARRANTY PLANS
OF NORTH AMERICA, LLC,

Defendants.

**ORDER AND OPINION ON MOTIONS
TO QUASH SERVICE OF PROCESS,
MOTIONS TO DISMISS, AND
MOTION FOR LEAVE TO AMEND
THE COMPLAINT**

1.      **THIS MATTER** is before the Court on two motions to quash service of process filed by Defendant Carrbridge Berkshire Group, Inc. ("Carrbridge Berkshire") on behalf of itself and Defendant Carrbridge Fidelity, LLC ("Carrbridge Fidelity") (collectively, the "Carrbridge Defendants"); Carrbridge Berkshire's motion to dismiss; Defendants TruNorth Warranty Plans of North America, LLC ("TruNorth") and CompassOne Warranty Plans of North America, LLC's ("CompassOne") (collectively, the "Warranty Defendants") motion to dismiss; and Plaintiff Gateway Management Services, Ltd.'s ("Gateway" or "Plaintiff") motion for leave to amend its complaint. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion to amend and

the Warranty Defendants' motion to dismiss and **DENIES as moot** Carrbridge

Berkshire's motions to quash service of process and motion to dismiss.

> *Craige Jenkins Liipfert & Walker, LLP, by Ellis B. Drew, III, for Plaintiff.*

> *Womble Bond Dickinson (US), LLP, by Hayden J. Silver, III and Raymond M. Bennett, for Defendants Carrbridge Berkshire Group, Inc., TruNorth Warranty Plans of North America, LLC, and CompassOne Warranty Plans of North America, LLC.*

Robinson, Judge.

## I.     INTRODUCTION

2.     This litigation arises between competitors in the commercial used truck warranty business.  Plaintiff claims that Defendants falsely advertise and represent to consumers that they have insurance, assets, and business associations that they do not actually have, thereby unfairly usurping a commercial advantage that Defendants would otherwise have been required to earn through skill, labor, and efforts.  Plaintiff complains that it does have substantial insurance and assets to pay its customers' warranty claims, and is, thus, unfairly harmed by Defendants' conduct.

## II.     PROCEDURAL HISTORY

3.     The Court sets forth here only those portions of the procedural history relevant to its determination of the motions.

4.     Plaintiff filed its Complaint on August 21, 2017.  (ECF No. 4.)

5.     This action was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated November 9, 2017,

(ECF No. 3), and assigned to the undersigned by order of Chief Business Court Judge James L. Gale on November 13, 2017, (ECF No. 2).

6. On December 13, 2017, Carrbridge Berkshire, on behalf of itself and Carrbridge Fidelity, filed a Motion to Quash Service of Process (the "First Motion to Quash"). (ECF No. 14.) After Plaintiff made a second attempt to serve the Carrbridge Defendants, Carrbridge Berkshire stipulated that it had been properly served, but maintained the motion on behalf of Carrbridge Fidelity. (ECF No. 31.) On February 7, 2018, Carrbridge Berkshire, on behalf of Carrbridge Fidelity, filed a Second Motion to Quash Service of Process (the "Second Motion to Quash"), (ECF No. 43), and a brief in support asserting that Carrbridge Fidelity was never properly served, (ECF No. 44). Plaintiff did not respond to the Second Motion to Quash. The First and Second Motion to Quash will be referred to collectively as the "Motions to Quash."

7. Also on December 13, 2017, the Warranty Defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim (the "Warranty Defendants' Motion to Dismiss"). (ECF No. 16.) The motion has been fully briefed.

8. On December 22, 2017, the Warranty Defendants filed their answer and asserted counterclaims against Plaintiff. (ECF No. 23.)

9. On January 22, 2018, Plaintiff filed a Motion for Leave to Amend the Complaint (the "Motion to Amend"), with an attached proposed First Amended Complaint (the "Amended Complaint"). (Mot. Leave to Amend Compl., Ex. A, ECF No. 33 ["Am. Compl."].) On February 14, 2018, Carrbridge Berkshire and the

Warranty Defendants collectively filed a brief in opposition to the Motion to Amend. (ECF No. 50.) Plaintiff did not file a reply brief.

10. On February 12, 2018, Carrbridge Berkshire filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim ("Carrbridge Berkshire's Motion to Dismiss") and a brief in support, (ECF Nos. 45–46), as well as its answer and counterclaims, (ECF No. 47). Plaintiff did not file a response in opposition to Carrbridge Berkshire's Motion to Dismiss.

11. On March 29, 2018, the Court held a hearing on the Motions to Quash, the Warranty Defendants' Motion to Dismiss, Carrbridge Berkshire's Motion to Dismiss, and the Motion to Amend. All parties were represented by counsel at the hearing.

12. The motions are ripe for resolution.

### III. MOTIONS TO QUASH

13. Carrbridge Berkshire filed its First Motion to Quash on behalf of itself and Carrbridge Fidelity. (Mot. Quash Service Process ¶¶ 12–13, ECF No. 14.) Carrbridge Berkshire asserted that service was improper under Rule 12(b)(5) of the North Carolina Rules of Civil Procedure ("Rule(s)") as to both Carrbridge Defendants because copies of the summons and Complaint were not delivered to an officer, director, managing agent, or member of the Carrbridge Defendants; rather, service was delivered to the property manager of a building at which neither of the Carrbridge Defendants maintain an address. (Br. Supp. Mot. Quash Service Process 1–2, ECF No. 15 ["Br. Supp. Mot. Quash"].) Carrbridge Berkshire further argued that, as to Carrbridge Fidelity, the summons was invalid on its face under Rule

12(b)(4) because Carrbridge Fidelity is an entity that has never existed. (Br. Supp. Mot. Quash 5–6.)

14. After Plaintiff's second attempt to serve the Carrbridge Defendants, (Br. Opp'n Mot. Quash Service Process, Ex. A, ECF No. 32), Carrbridge Berkshire stipulated that it had been properly served but maintained that the First Motion to Quash, to the extent it was brought on behalf of Carrbridge Fidelity, should be granted, (Def. Carrbridge Berkshire's Stipulation Service Process 1–2, ECF No. 31). Carrbridge Berkshire filed a Second Motion to Quash as to Plaintiff's second attempt to serve Carrbridge Fidelity, again arguing that the summons is facially invalid because Carrbridge Fidelity does not exist. (Second Mot. Quash Service Process 2, ECF No. 43; Br. Supp. Second Mot. Quash Service Process 2, ECF No. 44.)

15. At the hearing, the parties stipulated that Carrbridge Fidelity never existed and, therefore, is not a proper party to this action. Accordingly, the Motions to Quash are denied as moot and Carrbridge Fidelity is dismissed from this action.

## IV.    PLAINTIFF'S MOTION TO AMEND

16. Under Rule 15(a), a party may amend a pleading to which a responsive pleading is permitted as a matter of course before the responsive pleading is served. N.C. Gen. Stat. § 1A-1, Rule 15(a). Thereafter, a party may only amend a pleading by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires. *Id.* A motion for leave to amend is addressed to the sound discretion of the trial court. *E.g.*, *Draughon v. Harnett Cty. Bd. of Educ.*, 166 N.C. App. 464, 467, 602 S.E.2d 721, 724 (2004). Reasons justifying denial of a motion

to amend are undue delay, bad faith, dilatory motive, repeated failure to cure defects by previous amendments, undue prejudice, and futility of amendment. *Bodie Island Beach Club Ass'n v. Wray*, 216 N.C. App. 283, 288–89, 716 S.E.2d 67, 73 (2011).

17. The Warranty Defendants and Carrbridge Berkshire oppose the Motion to Amend solely on the basis of futility, arguing that the Amended Complaint fails to state any claim upon which relief may be granted. (Defs.' Br. Opp'n Mot. Leave Amend 1–6, ECF No. 50.) Plaintiff argues that the Motion to Amend should be granted because whether the claims in the Amended Complaint are futile is best left to a later determination. (Br. Supp. Mot. Leave Amend Compl. 3–4, ECF No. 34.)

18. Plaintiff's original Complaint alleged that Defendants falsely claim to have insurance and business associations that they do not actually have, and further alleged that the Warranty Defendants' company names and designs infrine on other companies' trademarks, causing confusion in the relevant market. (Compl. ¶¶ 19–36.) The Complaint asserted claims for (1) "false representation," (2) unfair competition, and (3) unfair and deceptive trade practices ("UDTP"), and requested that the Court enjoin Defendants from falsely representing their affiliations and insurance coverage. (Compl. 3–5, 7.)

19. In contrast, the Amended Complaint makes no mention of trademark infringement and does not reassert a claim for false representation, but again asserts claims for unfair competition and UDTP based on nearly identical facts to those alleged in the Complaint. (*Compare* Compl. ¶¶ 19–32, 40–44, 51–68, *with* Am. Compl. ¶¶ 16–33, 36–56.) The Amended Complaint also adds a claim for tortious interference

with contract. (Am. Compl. ¶¶ 61–66.) Finally, the Amended Complaint asserts claims against the Warranty Defendants and Carrbridge Fidelity, but does not name Carrbridge Berkshire as a defendant. (Am. Compl. 1.)

20. At this early stage of the litigation, the Court finds no reason to depart from the general rule that leave to amend pleadings should be freely given where justice so requires and, therefore, grants Plaintiff's Motion to Amend.

21. Although an amended pleading would ordinarily moot a pending motion to dismiss, the Court will consider Defendants' Motions to Dismiss as to the Amended Complaint because Defendants and Plaintiff both addressed the sufficiency of the Amended Complaint in their respective briefs and at the hearing. (Reply Br. Supp. Mot. Dismiss Lack Subject Matter Jurisdiction & Failure State Claim of Defs. TruNorth & CompassOne 2, ECF No. 48 ["Reply Br. Supp. Mot. Dismiss"]; Br. Opp'n Mot. Dismiss Lack Subject Matter Jurisdiction & Failure to State Claim of Defs. TruNorth and CompassOne 9–15, ECF No. 35 ["Pl.'s Br. Opp'n Mot. Dismiss"].)

22. Because Plaintiff did not name Carrbridge Berkshire as a defendant in the Amended Complaint, Carrbridge Berkshire is no longer a named party-defendant in this action, having been effectively dismissed by Plaintiff. Therefore, Carrbridge Berkshire's Motion to Dismiss is denied as moot. Accordingly, the Court limits its further discussion to the Motion to Dismiss filed by the Warranty Defendants, referred to hereafter as Defendants.

## V.    MOTION TO DISMISS

### A.    Factual Background

23. The Court does not make determinations of fact on motions to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") but only recites those factual allegations of the Amended Complaint that are relevant and necessary to the Court's determination of the motions to dismiss. To the extent additional facts are presented by the record that are relevant to Defendants' arguments that dismissal is proper under Rule 12(b)(1), those facts will be addressed in later relevant portions of this Order and Opinion.

### 1.    The Parties

24. Gateway is a North Carolina corporation with its principal place of business in Forsyth County. (Am. Compl. ¶ 1.)

25. TruNorth is a North Carolina limited liability company with its principal place of business in Mecklenburg County. (Am. Compl. ¶ 2.)

26. CompassOne is a North Carolina limited liability company that maintained its principal place of business in Mecklenburg County before it was administratively dissolved. (Am. Compl. ¶ 3.)

27. The Amended Complaint alleges that Defendants are affiliated companies owned in whole or in part by William Kirk Eskridge ("Eskridge"). (Am. Compl. ¶ 5.)

28. Prior to the instant litigation, in 2014 Plaintiff filed a complaint against Carrbridge Berkshire and Eskridge to recover money owed to Plaintiff on a promissory note (the "2014 Litigation"). (Am. Compl. ¶ 14.) Plaintiff alleges that the

claims in this action were neither a part of the 2014 Litigation nor included in the settlement thereof. (Am. Compl. ¶ 14.)

### 2. Commercial Truck Warranty Business

29. Gateway and Defendants are direct competitors in the used commercial truck warranty business. (Am. Compl. ¶ 6.)

30. Because Gateway and Defendants often issue warranties for older model commercial trucks with extensive mileage, the parties must maintain substantial capital, adequate reserves, and adequate insurance to be able to cover customers' warranty claims. (Am. Compl. ¶¶ 8–9.)

31. Gateway maintains substantial capital, reserves, and insurance to cover its outstanding warranty claims. (Am. Compl. ¶ 10.) Gateway alleges that, although Defendants do not have substantial assets or sufficient insurance to pay all of their valid warranty claims, Defendants falsely represent to the public that they have substantial assets and insurance and are affiliated with or reinsured by companies with substantial assets and insurance. (Am. Compl. ¶¶ 11–12.) Specifically, Gateway alleges that (1) TruNorth, although not insured, advertises and represents that it is insured by "Barclay/CF/LOL," with "LOL" referring to Lloyd's of London Insurance Company ("Lloyd's of London"), (Am. Compl. ¶¶ 17–18); and (2) the Warranty Defendants advertise and represent that they are insured or reinsured by Carrbridge Fidelity, (Am. Compl. ¶¶ 19, 23–24). Gateway alleges that neither the Warranty Defendants nor Carrbridge Fidelity are insured or reinsured by Lloyd's of London,

(Am. Compl. ¶¶ 20, 22), and that Carrbridge Fidelity is not an insurance or reinsurance company, or even an existing company, (Am. Compl. ¶¶ 26–27).

32. The Amended Complaint further alleges that Defendants falsely advertise that they are part of or affiliated with Berkshire Hathaway, a multibillion dollar company that is partly owned by Warren Buffett. (Am. Compl. ¶¶ 28–29.)

33. Gateway alleges that Defendants' above-described false representations led to confusion in the marketplace, constituted unfair competition, and usurped Gateway's commercial advantage that Gateway earned through skill, labor, and efforts, causing Gateway to lose customers and revenue. (Am. Compl. ¶¶ 13, 40–48.)

34. The Amended Complaint asserts claims against Defendants for (1) unfair competition, (2) UDTP, and (3) tortious interference with contract and requests that the Court enjoin Defendants from falsely representing their affiliations and insurance coverage. (Am. Compl. 3–7.)

**B.    The Motion to Dismiss**

35. Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and additionally pursuant to Rule 12(b)(6) for failure to state a claim. (Mot. Dismiss Lack of Subject Matter Jurisdiction & Failure State Claim of Defs.' TruNorth & CompassOne, ECF No. 16.)

**C.    Legal Standard**

**1.    Rule 12(b)(1)**

36. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C.

App. 110, 113, 574 S.E.2d 48, 51 (2002). When it appears that the court lacks subject matter jurisdiction, the court shall dismiss the action. N.C. Gen. Stat. § 1A-1, Rule 12(h)(3). "A motion to dismiss for lack of subject matter jurisdiction is not viewed in the same manner as a motion to dismiss for failure to state a claim upon which relief can be granted." *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978). A court may consider matters outside the pleadings in determining whether subject matter jurisdiction exists. *Keith v. Wallerich*, 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009); *Tart*, 38 N.C. App. at 502, 248 S.E.2d at 737. However, "if the trial court confines its evaluation [of standing] to the pleadings, the court must accept as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff." *Munger v. State*, 202 N.C. App. 404, 410, 689 S.E.2d 230, 235 (2010).

### 2. Rule 12(b)(6)

37. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations of the Amended Complaint in the light most favorable to Plaintiff. The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes the Amended Complaint liberally and accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human*

*Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005). The Court can also ignore a party's legal conclusions set forth in its pleading. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

38. Where the pleading refers to and depends on certain documents, the Court may consider those documents without converting the motion into one for summary judgment under Rule 56. *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009). A "trial court can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster*, 199 N.C. App. at 577, 681 S.E.2d at 862. At the same time, the Court may not consider materials that are not mentioned, contained, or attached in or to the pleading; otherwise, a Rule 12(b)(6) motion will be converted into a Rule 56 motion and subject to its standards of consideration and review. *Fowler v. Williamson*, 39 N.C. App. 715, 717, 251 S.E.2d 889, 890−91 (1979).

39. Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the . . . claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

### D.  Plaintiff's Standing

40.  Defendants argue that Plaintiff lacks standing to assert claims for unfair competition and UDTP.  (Reply Br. Supp. Mot. Dismiss 3–5.)  Although the Court may consider matters that are outside the pleadings in deciding whether subject matter jurisdiction exists, *Keith*, 201 N.C. App. at 554, 687 S.E.2d at 302, Defendants' materials filed in support of the motion to dismiss relate to whether Plaintiff, in settling the 2014 Litigation, released its claims against Defendants, (*see* Aff. Raymond M. Bennett, ECF No. 18; Bennett Aff. Exs. A–B, ECF Nos. 19–20).  The Court declines to consider these materials as they have no bearing on whether Plaintiff has standing to assert an unfair competition or UDTP claim.  As a result, the Court confines its analysis of Plaintiff's standing to the pleadings.

41.  "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 626, 574 S.E.2d 55, 57 (2002).  Standing requires "that the plaintiff have been injured or threatened by injury or have a statutory right to institute an action." *Bruggeman v. Meditrust Co., L.L.C.*, 165 N.C. App. 790, 795, 600 S.E.2d 507, 511 (2004) (quotation marks omitted). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commercial Courier Express, Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005).

42.  Under North Carolina law, a party has standing if he is the real party in interest. *Energy Inv'rs Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337, 525

S.E.2d 441, 445 (2000). "A real party in interest is one who benefits from or is harmed by the outcome of the case and by substantive law has the legal right to enforce the claim in question." *Id.* at 824, 611 S.E.2d at 193–94.

43. Although North Carolina courts are not constrained by the federal standing requirements of Article III of the United States Constitution, our courts have frequently considered the federal standard as instructive in deciding whether a party is a real party in interest. *See Goldston v. State*, 361 N.C. 26, 35, 637 S.E.2d 876, 882 (2006); *Teague v. Bayer AG*, 195 N.C. App. 18, 22, 671 S.E.2d 550, 554 (2009). Under that standard, the elements of standing are:

> (1) "injury in fact"—an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Neuse River Found., Inc.*, 155 N.C. App. at 114, 574 S.E.2d at 52 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560−61 (1992)). "Standing most often turns on whether the party has alleged 'injury in fact' in light of the applicable statutes or case law." *Id.*

44. Plaintiff, as the party invoking the Court's jurisdiction, has the burden of establishing standing. *Cherry v. Wiesner*, 781 S.E.2d 871, 876 (N.C. Ct. App. 2016). "In establishing the elements of standing, each element must be supported in the same way as any other matter on which [Plaintiff] bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."

*Cherry Cmty. Org. v. City of Charlotte*, 809 S.E.2d 397, 400 (N.C. Ct. App. 2018) (quotation marks and emphasis omitted).

45. Defendants argue that Plaintiff lacks standing to assert its unfair competition claim because that claim is based on Defendants' alleged misappropriation of the commercial advantage of third parties, not Plaintiff. (Reply Br. Supp. Mot. Dismiss 3–4.) Defendants argue that Plaintiff's UDTP claim is, in reality, a fraud claim for which Plaintiff lacks standing because Plaintiff does not allege that it was deceived by Defendants' alleged false statements. (Br. Supp. Mot. Dismiss Lack Subject Matter Jurisdiction & Failure State Claim of Defs. TruNorth & CompassOne 1–2, 8–9, ECF No. 17 ["Br. Supp. Mot. Dismiss"]; Reply Br. Supp. Mot. Dismiss 4, 7–8.)

46. The Court notes initially that Plaintiff's claims for common law unfair competition and UDTP are premised on nearly identical factual allegations that Defendants' false association with third parties resulted in unfair competition in the commercial truck warranty business. (*Compare* Am. Compl. ¶¶ 16–28, 33, *with* Am. Compl. ¶¶ 36–40, 43–51.)

47. The distinction between common law unfair competition and UDTP claims is not clear as "[t]he standard for violation of the UDTPA and common law unfair competition are not 'appreciably different.'" *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2011 U.S. Dist. LEXIS 31039, at *52–53 (E.D.N.C. Jan. 25, 2011) (quoting *BellSouth Corp. v. White Directory Publishers, Inc.*, 42 F. Supp. 2d 598, 615 (M.D.N.C. 1999)). The key distinction between the two claims is that common law

unfair competition claims are limited to claims between business competitors, whereas a UDTP claim may be maintained by a consumer or a business competitor. *See Henderson v. U.S. Fid. & Guar. Co.*, 124 N.C. App. 103, 108, 476 S.E.2d 459, 462 (1996) ("The primary purpose of [unfair and deceptive acts] statutes was to extend to the consuming public the protection once afforded only to business competitors through the common law tort of unfair competition, which required a showing of competitive injury and hence was not an effective remedy for consumers. On the other hand, statutory unfair competition extends to all unfair and deceptive practices.").

### 1. Common Law Unfair Competition

48. Defendants contend that Plaintiff lacks standing to assert a claim for common law unfair competition, which Defendants characterize as a trademark infringement claim, because Plaintiff does not allege that Defendants have infringed a trademark or commercial advantage belonging to Plaintiff. (Reply Br. Supp. Mot. Dismiss 3, 5–7; *see also* Br. Supp. Mot. Dismiss 10.) Plaintiff contends that it does not assert a trademark infringement claim, but instead alleges that Defendants unfairly usurped Plaintiff's commercial advantage by falsely associating themselves with other companies. (Pl.'s Br. Opp'n Mot. Dismiss 9–10.)

49. "Traditionally at common law, including that of North Carolina, the tort of unfair competition has consisted of acts or practices by a competitor which are likely to deceive the consuming public." *Stearns v. Genrad, Inc.*, 564 F. Supp. 1309, 1320 (M.D.N.C. 1983) (citing *Charcoal Steak House of Charlotte, Inc. v. Staley*, 263 N.C.

199, 139 S.E.2d 185 (1964)).  "The gravamen of unfair competition is the protection of a business from misappropriation of its commercial advantage earned through organization, skill, labor, and money."  *Henderson v. U.S. Fid. & Guar. Co.*, 346 N.C. 741, 749, 488 S.E.2d 234, 239–40 (1997).  Unfair competition has been found to encompass a range of behaviors "such as trademark infringement, imitation of a competitor's product or its appearance, interference with a competitor's contractual relations, [and] disparagement of a competitor's product or business methods, and misappropriation of a competitor's intangible property rights such as advertising devices or business systems."  *Stearns*, 564 F. Supp. at 1320.

50.   A review of cases involving a defendant's advertisements alleged to constitute unfair competition reveal that such claims generally involve a defendant's attempt to capitalize on or harm plaintiff's goodwill by, for example, falsely representing that defendant's products are identical or superior to plaintiff's products, passing off its products as plaintiff's products, or disparaging plaintiff's product or business methods.  *See id.* at 1309, 1320; *Henderson*, 124 N.C. App. at 109, 476 S.E.2d at 463 (collecting cases).  Here, Plaintiff alleges that Defendants falsely advertised and represented to the consuming public that they are insured by Lloyd's of London and associated with Berkshire Hathaway when they are not so insured or associated. (Am. Compl. ¶¶ 11, 16–29, 36–50.)  Thus, to the extent Defendants have misappropriated any business's commercial advantage, it has misappropriated the commercial advantage of Lloyd's of London or Berkshire Hathaway, or those

companies who in fact are affiliated with Lloyd's of London or Berkshire Hathaway—not Plaintiff.

51. Based on the foregoing, the Court concludes that Plaintiff is not the real party in interest with respect to its common law unfair competition claim and, therefore, lacks standing to assert this claim. Accordingly, Plaintiff's unfair competition claim is dismissed without prejudice. *See Holton v. Holton*, ___ N.C. App. ___, No. COA17-467, 2018 N.C. App. LEXIS 297, at *13 (N.C. Ct. App. Mar. 20, 2018) ("[A] dismissal under Rule 12(b)(1) must be made without prejudice, since a trial court without jurisdiction would lack authority to adjudicate the matter.").

### 2. UDTP Claim

52. Defendants contend that Plaintiff's UDTP claim is a misnamed claim for fraud for which Plaintiff lacks standing because Plaintiff does not allege that Defendants made any misrepresentation to Plaintiff. (Br. Supp. Mot. Dismiss 8–10.) The Court does not agree that Plaintiff's UDTP claim is an improperly pleaded fraud claim. Rather, N.C. Gen. Stat. § 75-1.1 creates a cause of action broader than common law fraud and may include conduct that does not meet the requirements for fraud. *See Bumpers v. Cmty. Bank of N. Va.*, 267 N.C. 81, 87–88, 747 S.E.2d 220, 226 (2013) (noting that § 75-1.1 "is broader and covers more than traditional common law proscriptions on tortious conduct, though fraud and deceit tend to be included within its ambit"). Thus, for purposes of the Motion to Dismiss, the Court treats Plaintiff's allegations as a claim that Defendants, by falsely representing to the consuming public that Defendants have ample insurance and assets to pay warranty claims,

unfairly attract customers to their business and away from Plaintiff's business, thereby causing Plaintiff harm.

53. Standing for redress of UDTP is governed by N.C. Gen. Stat. § 75-16, which provides:

> If *any person* shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured *by reason of any act or thing* done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done . . . .

N.C. Gen. Stat. § 75-16 (emphasis added). Thus, standing for a UDTP claim is broad and gives anyone whose injury is proximately caused by an unfair or deceptive act standing to sue. *See Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 67–68, 653 S.E.2d 393, 396–97 (2007). However, as with other causes of action, to have standing to bring a UDTP claim, "the plaintiff must prove the elements of standing, including 'injury in fact.'" *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 175, 684 S.E.2d 41, 52 (2009).

54. Plaintiff contends that the Amended Complaint sufficiently alleges an injury in fact by alleging that Defendants' conduct has diminished Plaintiff's position in the truck warranty market and has caused Plaintiff to lose current and potential customers. (Pl.'s Br. Opp'n Mot. Dismiss 7.)

55. Plaintiff's allegations of harm are that Defendants, by falsely associating themselves with third parties, misappropriated a commercial advantage, deceived the public and Plaintiff's customers and potential customers, "unfairly usurp[ed] business potential from Plaintiff by enticing customers and potential customers"

away from Plaintiff, and caused Plaintiff to lose revenue. (Am. Compl. ¶¶ 13, 30–33, 51–54, 56.) The only allegations of harm incurred by Plaintiff, as opposed to the public, are conclusory allegations that Defendants misappropriated a commercial advantage, usurped "business potential" by luring away customers and potential customers, and caused Plaintiff to lose revenue. However, as discussed above, while it is generally alleged that Defendants misappropriated *a* commercial advantage, Plaintiff has not sufficiently alleged that Defendants misappropriated *Plaintiff's* commercial advantage. Thus, the only non-conclusory allegation of harm to Plaintiff is that Defendants' advertising enticed customers to select Defendants instead of Plaintiff for their commercial truck warranty needs, thereby causing Plaintiff to lose revenue.

56. While the Court must view the allegations of the Amended Complaint in the light most favorable to Plaintiff on a motion to dismiss for lack of standing, *Munger*, 202 N.C. App. at 410, 689 S.E.2d at 235, the Court cannot conclude that the Amended Complaint alleges anything other than speculative or conjectural injuries.

57. Therefore, Plaintiff fails to allege a concrete, particularized injury sufficient to establish that Plaintiff has standing to bring its UDTP claim based on Defendants' conduct. Accordingly, Plaintiff's UDTP claim is dismissed without prejudice.

E. **Failure to State a Claim Under Rule 12(b)(6)**

1. **Tortious Interference with Contract**

58. The Amended Complaint asserts a claim for tortious interference with contract alleging that Plaintiff had valid contracts with customers and that

Defendants, through their prior affiliation with Plaintiff, were aware of the existence of Plaintiff's contracts with its customers. (Am. Compl. ¶¶ 61–62.) Plaintiff further alleges that Defendants, by falsely representing their insurance coverage and affiliations, "intentionally induced certain customers of Plaintiff to discontinue business, and thus breach their contracts" with Plaintiff and instead engage in business with Defendants. (Am. Compl. ¶¶ 13, 31–33, 51–53, 63.) The Amended Complaint alleges that Defendants' conduct lured away customers and potential customers who were doing business with Plaintiff, were likely to continue to do business with Plaintiff, or would engage in new business with Plaintiff in the future. (Am. Compl. ¶¶ 33, 51.) Plaintiff further alleges that Defendants intended to damage Plaintiff's business and that their actions were intentional, malicious, and without justification. (Am. Compl. ¶¶ 64–65.)

59. In order to state a claim for tortious interference with contract, Plaintiff must allege:

> (1) A valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third party not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

*Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 700, 784 S.E.2d 457, 462 (2016).

60. Defendants contend that the allegations of the Amended Complaint fail to adequately allege that Plaintiff had a valid contract with a third party or that Defendants acted without justification. (Reply Br. Supp. Mot. Dismiss 9–11.)

Plaintiff does not dispute that it is required to adequately allege the existence of a valid contract; instead, Plaintiff only addresses whether it has adequately alleged that Defendants' conduct was not justified. (Pl.'s Br. Opp'n Mot. Dismiss 14–15.)

61. The Amended Complaint alleges that Defendants induced "certain customers of Plaintiff to discontinue business, and thus to breach their contracts, with Plaintiff." (Am. Compl. ¶ 63.) The Amended Complaint also alleges that "Defendants . . . were aware of the identity of customers of [Plaintiff] and were aware of the existence of contracts between [Plaintiff] and customers." (Am. Compl. ¶ 62.) The Court concludes that these threadbare allegations are insufficient, even under the liberal Rule 12(b)(6) standard, to adequately allege the existence of a valid contract.

62. Because Plaintiff has failed to sufficiently identify a contract with which Defendants allegedly interfered, the Court concludes that Plaintiff has failed to state a claim for tortious interference with contract, and this claim is dismissed with prejudice.

## VI. CONCLUSION

63. For the foregoing reasons, the Court hereby **ORDERS** as follows:

   A. Because all parties agree that Carrbridge Fidelity is not a proper party to this action, the Court **DENIES as moot** the Motions to Quash and all claims against Carrbridge Fidelity are dismissed.

   B. The Court **GRANTS** Plaintiff's Motion for Leave to Amend.

C.     As a result of Plaintiff's amendment of its Complaint, whereby Plaintiff does not assert any claims against Defendant Carrbridge Berkshire in the Amended Complaint, Carrbridge Berkshire is no longer a party-defendant in this litigation.  Accordingly, Carrbridge Berkshire's Motion to Dismiss is **DENIED as moot**.

D.     The Court **GRANTS** the Warranty Defendants' Motion to Dismiss. The Court lacks subject matter jurisdiction to hear Plaintiff's unfair competition and UDTP claims against the Warranty Defendants, and those claims are dismissed without prejudice.  Plaintiff's tortious interference with contract claim is dismissed with prejudice.

**SO ORDERED**, this the 9th day of May, 2018.


/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
   for Complex Business Cases